Defendant-appellant Mark Saddler appeals from his conviction of possession of more than one thousand grams of cocaine, with a major drug offender specification; possession of heroin in excess of fifty but not more than two hundred fifty grams; possession of between the bulk amount and five times the bulk amount of methadone and possession of criminal tools. Appellant assigns the following assignments of error for our review:
 I. APPELLANT MARK SADDLER'S CONVICTIONS FOR DRUG POSSESSION AND POSSESSION OF CRIMINAL TOOLS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THEREFORE VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 II. TRANSPORTATION OF THE PACKAGE FROM THE JURISDICTION WHERE IT WAS FOUND TO A DIFFERENT JURISDICTION IN ORDER TO OBTAIN A SEARCH WARRANT CONSTITUTED AN UNREASONABLE SEIZURE AND VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 III. THE QUESTIONING OF APPELLANT MARK SADDLER REGARDING HIS PRIOR USE OF DRUGS CONSTITUTED PROSECUTORIAL MISCONDUCT AMOUNTING TO A DENIAL OF DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE EXTENSIVE CROSS-EXAMINATION OF APPELLANT MARK SADDLER REGARDING HIS USE OF ILLEGAL DRUGS IN VIOLATION OF EVID.R. 401, 402, 403, 404 AND 608.
 V. PROSECUTORIAL MISCONDUCT, INCLUDING IMPROPER QUESTIONING OF APPELLANT AND VOUCHING FOR THE CREDIBILITY OF WITNESSES AND EVIDENCE, CONSTITUTED PLAIN ERROR.
 VI. APPELLANT MARK SADDLER WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, BY DEFENSE COUNSEL'S FAILURE TO OBJECT TO REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT, INCLUDING IMPROPER CROSS-EXAMINATION OF APPELLANT AND IMPROPER VOUCHING FOR WITNESSES AND EVIDENCE.
We affirm in part, vacate in part and remand for re-sentencing on Counts One and Two.
 I.
The evidence adduced at trial reveals that on February 11, 1997, Gene R. Cook, special agent with the Ohio Bureau of Criminal Investigation and Identification, was at the Federal Express terminal in Brooklyn Heights, Ohio. Agent Cook, along with his trained narcotic-detecting dog, Gunner, was inspecting packages being shipped into northeast Ohio via FedEx to locate packages that contained narcotics.
At approximately 7:20 a.m., Agent Cook observed a package addressed to "Jean Brown, 3040 East 126th Street, Cleveland, Ohio 44120," with a return address of "Marie Moses, 4814 W. Slavson, Los Angeles, California 90056." The package had been sent "priority overnight" and was heavily taped with plastic tape.
Aware that the box was being sent from a "source area," i.e., a city known to supply large amounts of drugs, to an area in Cleveland known to have drug activity, Agent Cook pulled the package off the line. He then hid it in a separate room, surrounded by approximately two hundred other pieces of mail, and brought in Gunner, who gave a positive alert to the presence of drugs in the package.
Agent Cook then contacted Detective Michael C. Perry of the East Cleveland Police Department. According to Det. Perry, the East Cleveland Police Department was working with Agent Cook and the Bureau of Criminal Investigation and Identification to identify suspect packages coming into East Cleveland and other area municipalities. Det. Perry testified that time is of the essence in these cases and the East Cleveland Police Department has information common to all search warrants in its computer so it can expedite the process of obtaining a warrant.
Cook advised Perry that he had a suspect package and needed a search warrant to open the package. Perry, in turn, contacted Detective Arthur Echols of the Cleveland Police Department Fourth District to alert him that if the package contained drugs, there would be a controlled delivery later that day to an address in his district.
Agent Cook then brought the package to the East Cleveland Police Department and, after Det. Perry obtained a search warrant, opened the package. It contained a brick of white powder and two ball-size bundles of a black, tar-like substance. Det. Perry removed and tested approximately one gram of each substance, which tested positive for cocaine and heroin. After contacting William Leppla, special agent with the Drug Enforcement Administration, to make arrangements for a controlled delivery of the package, Det. Perry delivered the package to the Cleveland Police Department.
At the Cleveland Police Department, Det. Echols weighed the drugs, determining that, less the amount used by Det. Perry in his field test, the cocaine weighed 999.87 grams and the heroin weighed 49.09 grams. Det. Echols testified that a kilo of cocaine contains one thousand grams and sells for $15,000 to $25,000.
To avoid losing the evidence after delivery, Det. Echols put only 59.87 grams of cocaine and 24.7 grams of heroin back into the box, and put crumpled newspapers and magazines in the box to compensate for the weight that had been removed. He then rewrapped and resealed the package.
Officer Curtis Miller did an initial drive-by surveillance of the house on East 126th Street, determining that it was a two-family house, with an apartment upstairs and an apartment downstairs. It had a front door that led to the downstairs apartment and an entrance in the rear for the upstairs apartment.
Det. Echols testified that he conducted a subsequent undercover surveillance of the house. According to Echols, shortly after 10:00 a.m., he observed appellant exit the rear of the house, walk down the driveway, check the mailbox, and then walk back and re-enter the house.
After returning to the police station, Det. Echols determined that the utilities at 3040 East 126th Street were listed to a "Margaret Tatum". He also determined that no one by the name of Jean Brown lived at the house to which the package was being sent and no one named Marie Moses lived at the return address listed on the package.
At approximately 2:15 p.m., Agent Leppla, posing as a Federal Express driver, delivered the package. Leppla testified that as he entered the rear door of the residence, appellant came walking down the stairs from the upstairs apartment. Leppla looked at appellant and said, "I've got a package for ___," and then stopped talking. Appellant responded, "Jean Brown." Leppla then told appellant that he had to sign the delivery sheet before Leppla could give him the package. According to Leppla, appellant was very anxious to get the package and kept reaching for it. Appellant signed his name on the delivery sheet, took the package and walked back up the stairs.
Approximately ten minutes later, a SWAT team secured the premises and ten police officers moved in to search the house pursuant to an anticipatory search warrant obtained earlier in the day. The officers found appellant and another male, Nassif Assaboor, nicknamed Bo, in the house. The package was unopened on the kitchen table. According to Agents Cook and Leppla, drug traffickers usually leave a package unopened for some time after delivery so if the police come in, they can deny any knowledge about the contents of the package.
Det. Echols testified that he read appellant his Miranda rights and then questioned him. Appellant stated that he slept in the east bedroom, in which the officers found a loaded .38 caliber Smith Wesson revolver, $16,500 cash in a purple velvet Crown Royal bag, separate bundles of cash in the amounts of $1,000 and $980, a triple beam scale, heroin, a pill bottle containing methadone pills and a box containing plastic bags with cocaine residue.
During their search of the premises, the officers also found items that Agent Leppla described as "commonly used in the drug trade," including a digital scale, a grinder, a "rerock" bowl, a glass ashtray containing cocaine residue, various pipes and vials, a metal rod, a ceramic bowl, plastic bottles, a plastic sandwich bag containing black tar heroin and a fish bowl containing powdered lactose.
Detective Deborah Harrison testified that the phone rang while she and the other officers were searching the house. When she answered the phone, the caller, later identified as James Maxwell, asked to speak to Bo and indicated that he was interested in the package that had been delivered. Harrison told him that the package had been delivered. Maxwell called and spoke with Harrison about the package two more times. When he subsequently arrived at the house to purchase drugs, he was arrested.
As the police officers were completing their search, Margaret Tatum arrived at the house. She told the officers that she leased the apartment but only stayed there two or three days a week.
After the presentation of the state's case, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion. Appellant also moved to suppress evidence of his prior misdemeanor theft offense, which the trial court granted. Appellant then asked the court for a ruling regarding Evid.R. 404. Appellant's counsel argued that the trial court should not allow the state to question appellant regarding his use of illegal drugs and stated that she was "asking for a ruling right now regarding the rule" because she did "not want to be in the position to (sic) making the objection so that the jury might think that we have something to hide."
The trial court denied appellant's motion. The trial court ruled that the prosecutor could ask appellant whether he used drugs, and if appellant answered affirmatively, he could inquire further, but if appellant answered negatively, any further questions about appellant's drug use would be prohibited.
Appellant's mother, Irene Saddler, testified in his defense. Saddler testified that appellant lived with her and that on February 11, 1997, he was at a doctor's appointment in the morning. He returned to the house and then left again between 11:00 a.m. and 12:00 a.m. to go fix someone's car. According to Saddler, appellant had worked in several garages and always worked on cars.
Appellant testified that he lived with his mother and was a mechanic. According to appellant, a woman named Anisa Jewel lived in the upstairs apartment at 3040 East 126th Street, and on February 11, 1997, he went to her apartment to fix her car. When he arrived at the apartment, Jewel was not dressed and asked him to sit down and wait. Nassif Assaboor arrived shortly after.
After Jewel got dressed, she told appellant that she had to pick up her daughter from school, using her car, and asked appellant if he could wait at the apartment until she returned. Before she left, Jewel told appellant that a package was coming for her, addressed to "Jean Brown," and she asked appellant if he would sign for it. According to appellant, he did not ask Jewel what was in the package.
Appellant testified that Jewel left between 11:30 a.m. and 12:00 a.m. and he sat down and watched television. Shortly after she left, appellant signed for a FedEx package that contained airline tickets. He then left the apartment to go to the store. He returned approximately fifteen minutes later, made a cup of coffee and sat down to watch television. Appellant admitted that when the doorbell rang a short time later, he went downstairs and signed for the package addressed to Jean Brown, but denied that he knew what was in the package or that any of the items discovered during the subsequent search of the apartment were his.
On cross-examination, appellant denied that he checked the mailbox on February 11, 1997 for a package, that he was anxious to receive the package, that he told the police officers that he stayed in the east bedroom and that any of the drug-related items found in the apartment were his. Appellant testified that all of the state's witnesses who had testified earlier were "mistaken" regarding their testimony.
In response to the prosecutor's question regarding whether he had ever used drugs, appellant stated, "Yes, I have." The prosecutor then questioned appellant extensively regarding his drug use. Appellant's counsel did not object to this testimony. Similarly, appellant's counsel did not make any objections during the state's closing argument.
On January 14, 1998, the jury returned a verdict of guilty on all counts and specifications. The trial court subsequently sentenced appellant to concurrent terms of ten years in prison on count one, three years on count two, one year on count three and one year on count four. This appeal followed.
 II.
In his first assignment of error, appellant challenges the sufficiency of the evidence supporting his convictions for possession of cocaine and heroin.
A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant was convicted of possession of cocaine, in excess of one thousand grams, and possession of heroin, in excess of fifty but not more than two hundred fifty grams, in violation of R.C.2925.11. R.C. 2925.11 provides that "No person shall knowingly obtain, possess, or use a controlled substance" and specifies the penalties pertaining to the amounts involved. Thus, to sustain appellant's conviction, the state had to prove beyond a reasonable doubt that appellant knowingly possessed drugs in the amounts specified.
A person acts "knowingly" when "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B). Knowledge is generally not susceptible to direct proof, but must be determined through inferences drawn from the surrounding facts and circumstances. State v. Green (April 20, 1988), Hamilton Cty. App. No. C-860791, unreported.
"`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). Possession may be actual or constructive. State v.Haynes (1971), 25 Ohio St.2d 264, 269-270. Although circumstantial evidence is sufficient to support the element of constructive possession, Jenks at 273, constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. State v. Giles (May 12, 1994), Cuyahoga App. No. 63709, unreported. Constructive possession requires some evidence that the person exercised or has the power to exercise dominion or control over the object, even though that object may not be within his immediate physical possession. State v. Wolery (1976),46 Ohio St.2d 316, 332.
Appellant argues that the evidence was insufficient to show that he possessed over one thousand grams of cocaine and between fifty and two hundred fifty grams of heroin because the package as delivered contained only 59.87 grams of cocaine and 24.7 grams of heroin. Appellant asserts that he had no ability to exercise any dominion or control over the drugs that were removed from the package and, therefore, he could not have constructively possessed them.
The state contends, however, that by taking actual possession of the package, appellant exercised constructive possession of the entire amount of cocaine and heroin in the package before the police opened the package and removed most of the drugs. The state cites State v. Williams (Dec. 24, 1996). Hamilton App. No. C-950740, as authority for this proposition. In Williams, the police intercepted an express mail package that contained over 1,000 grams of cocaine and replaced the cocaine with a "dummy kilo" that weighed 800 grams. A friend of the defendant subsequently picked up the package from the post office for the defendant. Upon her arrest, she agreed to cooperate with the police and make taped phone calls to the defendant. Based on her statements and the taped phone calls, the police arrested the defendant, who was subsequently convicted of two counts of aggravated trafficking.
On appeal, the defendant argued that because the police had replaced the cocaine in the package with a dummy kilo, the evidence was insufficient to prove possession of drugs in an amount equal to or greater than the bulk amount. The First District Court of Appeals disagreed. The Court concluded that the defendant had constructive possession of the package because he exerted dominion and control over the package by directing his agent to pick up the package for him. In addition, the Appeals Court held that although the defendant did not exercise control over the package until after the police had converted its contents to an amount that weighed less than one hundred times the bulk amount, "the amount of contraband in the package over which [the defendant] exerted constructive possession relates back to the amount in the package at the time the police made the substitution." Id. at 493. The Court stated:
 We hold that when law enforcement has properly intercepted a package and proves the original contents, and then substitutes a benign material, the relevant amount of contraband is that amount in the original package, and if the defendant possesses the package thereafter, a jury is entitled to conclude that the defendant constructively possessed the original contents of the package, not the substituted material. (Citation omitted.)
We agree that the mere fact that the authorities have removed contraband from a package prior to when a defendant exercises dominion and control over the package does not preclude the defendant from constructively possessing the contraband removed from the package. See, e.g., United States v. Quesada (C.A.10, Sept. 4, 1991), No. 90-2124, unreported (Defendant had constructive possession of 997.2 grams of cocaine confiscated from the UPS package by the police before he picked up the package because he had the eleven-digit UPS tracking number which permitted him to claim, and thus exercise dominion and control over, the original package); United States v. Lewis, et al.
(C.A.6, April 21, 1998), No. 96-3797/96-3798/96-3955, unreported (Defendant had constructive possession of 187.26 grams of crack cocaine removed by the police from the UPS package because defendant called UPS to determine the arrival time of the shipment and arranged for co-defendants to pick up the package, activities sufficient to demonstrate her dominion and control over the package).
We decline to follow Williams in this case, however, because there is no evidence that appellant exercised any "dominion and control" over the package before he took actual possession of it. The package was not addressed to appellant, there is no evidence that appellant inquired of anyone regarding the whereabouts or delivery of the package before it was delivered, nor is there any evidence that appellant tried to direct the delivery of the package. On these facts, therefore, there is insufficient evidence to conclude that appellant had constructive possession of the package before it was delivered to him. It follows, therefore, that appellant did not have constructive possession of the contraband seized by the authorities from the package.
Appellant also asserts that the evidence was insufficient to demonstrate that he was aware that the package contained drugs. We disagree. The state presented sufficient evidence that appellant knew what was in the package. Det. Echols testified that appellant checked the mailbox to see if the package had been delivered. Agent Leppla testified that when he went to the house to deliver the package, appellant was anxious to get it and kept reaching for it as Agent Leppla held it. The police also found numerous items common to the drug trade scattered throughout the apartment, including $16,500 cash in appellant's bedroom, which, according to Det. Echols, is the price for a kilo of cocaine — the amount of cocaine in the package before the police intercepted it.
We hold, therefore, that there was insufficient evidence from which a jury could have reasonably concluded that appellant constructively possessed the cocaine and heroin removed from the package before he took actual possession of it. Accordingly, appellant's conviction on Counts One and Two is vacated.
We further hold, however, that although appellant did not constructively possess the cocaine and heroin removed from the package before he took actual possession of it, he knowingly possessed, in violation of R.C. 2925.11, the 59.87 grams of cocaine and 24.7 grams of heroin contained in the package when he accepted delivery of the package. Therefore, we enter judgment of conviction on Counts One and Two pursuant to appellant's actual possession of 59.87 grams of cocaine and 24.7 grams of heroin, in violation of R.C. 2925.11, and remand the case for re-sentencing on Counts One and Two.
Appellant's first assignment of error is sustained.
 III.
In his second assignment of error, appellant contends that the state violated his constitutional rights against unreasonable search and seizure when Agent Cook transported the package from the FedEx facility in Brooklyn Heights to the police station in East Cleveland in order to obtain a search warrant to open the package.
Appellant did not raise this issue in the trial court. An error that is waived by failure to object will not be noticed by the court of appeals unless it is plain error. Crim.R. 52(B). Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Under plain error analysis, a reviewing court will only reverse if, but for the error, "the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, 14.
Appellant argues that detention of property is governed by the principles of Terry v. Ohio (1968), 392 U.S. 1, and its progeny, which require that an investigative detention based upon reasonable suspicion exist no longer and be no more intrusive than necessary. Appellant argues that the state could have minimized the scope of its intrusion by detaining the package at the Brooklyn Heights facility and obtaining a warrant from a judge in that jurisdiction. Instead, appellant asserts, by moving the package to the East Cleveland Police station and obtaining a warrant there, the state exceeded the permissible scope of detention under Terry.
Appellant cites United States v. Place (1983), 462 U.S. 696, as support for his proposition. Appellant argues that in Place, the United States Supreme Court held that a detention of luggage constituted an illegal search and seizure, in part because law enforcement officers moved the luggage from one airport to another.
In Place, the defendant's behavior aroused the suspicion of law enforcement officers as he waited in line at the Miami International Airport to purchase a ticket to New York's La Guardia airport. The officers approached the defendant, requested identification and then received permission to search the two bags that he had checked. Because defendant's flight was about to depart, however, the agents did not search his luggage and the defendant boarded the plane. Subsequently, upon inspecting the address tags on defendant's luggage, the agents noticed discrepancies between the two street addresses. Further investigation revealed that neither address existed and the phone number the defendant had given them belonged to a third address. Accordingly, the Miami agents contacted Drug Enforcement Administration authorities in New York.
Upon defendant's arrival in New York, two DEA agents approached him and told him they believed that he might be carrying narcotics. When the defendant refused to consent to a search of his luggage, one of the agents told defendant that they were going to take the luggage to a federal judge to obtain a search warrant. Instead, the agents took the bags to New York's Kennedy airport, where they subjected the bags to a "sniff test" by a trained narcotics detection dog. At this point, ninety minutes had elapsed since the agents had seized defendant's luggage. Because it was late on a Friday afternoon, the agents retained the luggage until Monday morning, when they secured a search warrant. Upon opening one of the bags, they discovered over a kilo of cocaine.
In analyzing whether the seizure of defendant's luggage from his immediate possession for the purpose of arranging exposure to a narcotics detection dog was reasonable, the Supreme Court determined that the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of a person's luggage. Thus, the Court concluded that, in the absence of probable cause, the ninety-minute detention of the defendant's luggage was not reasonable.
The Court also noted that "in assessing the effect of the length of the detention, we take into account whether the police diligently pursue[d] their investigation." Id. at 709. Thus, the Court noted that the New York DEA agents had been advised by the Miami officers of the time of defendant's arrival in New York and could have made arrangements to have a drug-sniffing dog at La Guardia airport, thereby minimizing the intrusion on defendant'sFourth Amendment interests. Therefore, on the facts presented, the Supreme Court concluded that the ninety-minute detention of defendant's luggage exceeded the bounds of a permissible investigative stop pursuant to Terry and its progeny.
Place is easily distinguishable from this case. First, when Agent Cook determined that the package addressed to Jean Brown was suspicious, he immediately subjected it to a canine sniff test at the Brooklyn Heights FedEx facility and Gunner gave a positive alert to the presence of drugs in the package. Thus, unlike Place, where the defendant's luggage was held for ninety minutes before it was subjected to a canine sniff test, the police in this case had probable cause to obtain a search warrant to search the package minutes after it was seized. Furthermore, unlike Place, it was only after the police had probable cause to search the package that it was moved to a different location.
Moreover, it is apparent that "the police diligently pursue [d] their investigation" in this case in order to minimize the length of the detention of the package. Det. Perry testified that because the East Cleveland Police Department and the Bureau of Criminal Investigation and Identification had been working together to identify suspect packages coming into northeast Ohio, the East Cleveland Police Department had the information necessary to prepare a search warrant in its computers and could expedite the process of obtaining a search warrant. Time is of the essence in cases such as this because the police need to obtain a search warrant to open the package, arrange for a controlled delivery, obtain an anticipatory search warrant to search the premises after the package is delivered and still timely deliver the package so as not to raise the recipient's suspicion. Accordingly, it made sense for Agent Cook to bring the suspect package to Det. Perry, who he had worked with on other cases and who he knew could obtain a search warrant in a timely manner.
Therefore, we conclude that the police conduct in this case did not exceed the bounds of a permissible investigative detention. Appellant's second assignment of error is, accordingly, overruled.
 IV.
In his third and fourth assignments of error, appellant challenges the trial court's denial of his motion in limine and the prosecutor's subsequent questioning of appellant about his drug use. Because these assignments of error are related, we will consider them together.
After the state rested and prior to presentation of the defense case, appellant's counsel made an oral motion in limine to preclude any cross-examination of appellant regarding his drug use. The trial court denied appellant's motion, ruling that the prosecutor could ask appellant if he used drugs, but could only question him further if he responded in the affirmative. Subsequently, on cross-examination, the prosecutor asked appellant if he had ever used drugs. When appellant answered that he had, the prosecutor questioned him extensively regarding his drug use, including questions regarding what types of drugs appellant used, how much he used, the duration of his drug use, where he purchased drugs, the effect of the drugs and the difference in quality of various types of heroin.
Appellant contends that the trial court abused its discretion in denying his motion in limine to preclude this line of questioning because the evidence was not relevant to any of the issues in the case and the resultant prejudice outweighed any marginal relevance it may have had. Moreover, appellant contends, it was evidence of other acts offered to prove appellant's bad character and that he acted in conformity therewith, and thus should not have been admitted pursuant to Evid.R. 404(B).
In a criminal case in which a defendant-appellant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975),44 Ohio App.2d 335, paragraph three of the syllabus.
The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Jacks (1989), 63 Ohio App.3d 200,207. Accordingly, we review to determine if the trial court abused its discretion. State v. Davis (1988), 49 Ohio App.3d 109,114. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A).
The determinative issue in this case was whether appellant knowingly possessed the cocaine, heroin, methadone and criminal tools found at 3040 East 126th Street on February 11, 1997. On direct examination, appellant denied that he lived at that address and testified that he was only visiting the apartment that day to fix his friend's car. Appellant also denied that he knew what was in the package that he signed for or that any of the items discovered during the subsequent search of the apartment were his.
By asking appellant about his drug use and eliciting testimony from him indicating that he had extensive knowledge regarding the types and quality of cocaine and heroin, how they are used and how much they cost, the prosecutor elicited information that indicated that appellant's claimed lack of knowledge about the contents of the package and the drug paraphernalia found in the apartment was more than likely not true. The evidence, therefore, was relevant. The purpose of cross-examination is to challenge the credibility of a witness. Accordingly, evidence is relevant where it tends to show that a witness is lying. State v. Farley
(July 16, 1991), Washington Cty. No. 90 CA 12.
We agree with appellant, however, that the prejudicial effect of the testimony substantially outweighed its probative value, thus rendering it inadmissible under Evid.R. 403(A). The testimony regarding appellant's extensive drug use was an inflammatory appeal to the jury which provided no significant proof of appellant's guilt. Moreover, it could only provide the jury with the negative inference that appellant is a drug addict, and thus lead the jury to conclude that appellant had the propensity or inclination to commit the offenses he was charged with. Evidence of other acts is inadmissible for this purpose. Evid.R. 404(B). Accordingly, we conclude that the trial court abused its discretion in overruling appellant's motion in limine to exclude testimony regarding his prior drug use.
Having determined that it was error for the trial court to permit testimony regarding appellant's drug use, we must determine whether the error was prejudicial or harmless error.Davis, supra at 343. To make that determination, "[t]he court must read the entire record, disregarding the objectionable material, and then determine whether or not there was overwhelming evidence of the appellant's guilt." Id.
We have carefully reviewed the record before us as a whole, disregarding the references to appellant's drug use. We conclude that the record demonstrates overwhelming evidence of appellant's guilt aside from the disputed evidence. Accordingly, we find the error complained of was harmless beyond a reasonable doubt and did not deprive appellant of his constitutional right to a fair trial.
Similarly, because the error did not prejudicially affect appellant's right to a fair trial, we find no prosecutorial misconduct in the state's cross-examination of appellant. See, e.g., State v. Vrona (1988), 47 Ohio App.3d 145; State v. Papp
(1978), 64 Ohio App.2d 203.
Appellant's third and fourth assignments of error are overruled.
 V.
In his fifth assignment of error, appellant argues that the prosecutor's improper questioning of appellant regarding his drug use and his vouching for the credibility of witnesses in closing argument was plain error that requires reversal of appellant's conviction.
We have already determined that the prosecutor's questioning of appellant regarding his drug use was not prosecutorial misconduct. Accordingly, we address only appellant's arguments regarding the prosecutor's statements in closing argument.
The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, 165; State v.Smith (1984), 14 Ohio St.3d 13, 14. In making this determination, an appellate court should consider several factors: 1) the nature of the remarks, 2) whether an objection was made by counsel; 3) whether corrective instructions were given by the court, and 4) the strength of the evidence against the defendant. State v. Bell
(Mar. 18, 1993), Cuyahoga App. No. 61827, unreported, at 29-30;State V. Barnes (Oct. 27, 1988), Cuyahoga App. No. 54527, unreported; State v. Heredia (Sept. 24, 1987), Cuyahoga App. No. 52705, unreported; State v. Hill (1977), 52 Ohio App.2d 393, 396. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case.State v. Keenan (1993), 66 Ohio St.3d 402, 410. Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. Statev. Apanovitch (1987), 33 Ohio St.3d 19; State v. Maurer (1984),15 Ohio St.3d 239. The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor." State v.Underwood (1991), 73 Ohio App.3d 834, 840-841, citing Smith v.Phillips (1982), 455 U.S. 209, 219.
A prosecutor is afforded wide latitude in closing arguments.State V. Braxton (1995), 102 Ohio App.3d 28, 42. A prosecutor should not express his personal belief or opinion as to the credibility of a witness or the guilt of an accused, however, or allude to matters that are not supported by admissible evidence.Smith, 14 Ohio St.3d at 14.
Appellant argues that the following remarks made in the state's closing argument to the jury constituted plain error:
 PROSECUTOR: From the get go, from step one, the state has been nothing but fair about this case. We wanted to make sure on this case.
DEFENSE COUNSEL: Object.
THE COURT: This is closing.
 PROSECUTOR: We wanted to insure that each and every step we took was right, because this is a lot of coke.
Later in his argument, the prosecutor commented that the police officers made a "good law enforcement decision" to remove most of the drugs from the package before it was delivered. The prosecutor stated:
 That's what they're supposed to do and that's what they did. That's what the law allows them to do.
* * *
 This case involves some real fine police work. Some cases I get doesn't (sic). But this one does. It's a good, good job by a good, good group of police officers and they should be commended for it, quite frankly.
Subsequently, the prosecutor commented on the testimony of the police officers, stating:
 They're not going to come in here and make something up. It's scrutinized before they come in this courtroom. It's not going to happen. And I submit to you it did not happen in this case.
Appellant contends that the assurances by the prosecutor that this was "good police work," coupled with the insinuation that the testimony of the officers was credible because it had been "scrutinized" prior to trial constituted improper vouching for the credibility of witnesses.
Initially, we note that, with the exception of a single one-word objection, defense counsel did not object to the prosecutor's remarks. Ordinarily, an appellate court need not consider an error which a party complaining of could have, but did not, call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. Accordingly, appellant invokes the doctrine of plain error to overcome his failure to object to the remarks in the trial court. Notice of plain error, however, is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long, 53 Ohio St.2d 91, paragraph three of the syllabus.
We find that the prosecutor's remarks, although imprudent, do not rise to the exceptional level necessary to constitute plain error. First, the judge cautioned the jury that closing arguments were not to be considered as evidence. A jury is presumed to follow the instructions given to it by a trial judge. State v.Loza (1994), 71 Ohio St.3d 61, 75. Moreover, considering the prosecutor's comments in light of the entire case, we believe, beyond a reasonable doubt, that the jury would have found appellant guilty absent the prosecutor's remarks. United Statesv. Hastings (1983), 461 U.S. 499, 510-511. The record before this court leaves no doubt that appellant knowingly possessed cocaine, heroin, methadone and criminal tools. Furthermore, the record indicates that the prosecutor's isolated comments were made in the context of an otherwise fair trial.
Accordingly, appellant's fifth assignment of error is overruled.
 VI.
In his final assignment of error, appellant complains that he was denied effective assistance of counsel.
In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington (1984), 466 U.S. 668, 687.
The test enunciated in Strickland is essentially the same as the test adopted by the Ohio Supreme Court in State v. Hester
(1976), 45 Ohio St.2d 71, 79, and State v. Lytle (1976), 48 Ohio St.2d 391,395. See, also, State v. Xie (1992), 62 Ohio St.3d 521;State v. Bradley (1989), 42 Ohio St.3d 136, 141-142.
A presumption that a properly licensed attorney executes his or her duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel and judicial scrutiny of counsel's performance must be highly deferential. State v. Braxton (1995), 102 Ohio App.3d 28, 48.
The burden of establishing a claim of ineffective assistance is on the defendant, who must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing State v. Smith (1985). 17 Ohio St.3d 98,100; State v. Arvanitis (1986), 336 Ohio App.3d 213,219; Strickland, 466 U.S. at 689. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic.State v. Brown (1988), 38 Ohio St.3d 305, 319.
Appellant contends that he was denied effective assistance of counsel because his counsel failed to object to the prosecutor's cross-examination regarding his prior drug use and to the prosecutor's comments in closing argument regarding the credibility of witnesses.
The record makes it clear, however, that counsel's failure to object during appellant's cross-examination was a matter of trial strategy. As appellant's counsel stated to the trial judge when she made her motion in limine:
 I don't want to be in a position because he comes — he's brought it up. I don't want to be in a position to be objecting. I just wanted a ruling in advance whether that line of inquiry is going to be accepted.
* * *
 Our contention is under the rules of evidence that an objection to that question should be sustained. I do not want to be in the position to (sic) making the objection so that the jury might think that we have something to hide. But the question itself, under the rules of evidence, is improper.
Thus, appellant cannot now complain that his counsel's trial strategy of not objecting during his cross-examination was ineffective assistance of counsel.
We have also concluded that the prosecutor's remarks in closing argument, although imprudent, did not deprive appellant of a fair trial. Accordingly, counsel's failure to object during the state's closing argument was not deficient.
Finally, appellant has not demonstrated that he was prejudiced by his counsel's failure to object. Accordingly, he has failed to show that his counsel was ineffective.
Appellant's sixth assignment of error is overruled.
This cause is affirmed in part, vacated in part and remanded for re-sentencing for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellee and appellant equally share the costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
 BLACKMON, J., CONCURS; and PATTON, J., CONCURS IN PART ANDDISSENTS IN PART (WITH OPINION).